*823 OPINION.
Aeunkell:
The evidence before us on the question of the value of any good will acquired for stock is confined to gross sales, profits and losses, advertising expenditures and net tangibles of the Humphrey Co. prior to the merger, and of the Humphrey Division of petitioner subsequent to that event. We are asked to determine from that evidence that the Humphrey Co. was possessed of a valuable good will which became the property of the petitioner by reason of the merger, and of the transfer of the business of the Humphrey Co. to petitioner, and to determine, from the same evidence, what the value of such good will may have been. We are asked to assume that all earnings of the Humphrey Co. in excess of a fair return upon its net investment in tangible properties are directly attributable to good will, and to capitalize such excess earnings at either 10, 15, or 20 per cent, and accept the result as reflecting the fair value of the good will. We decline, for obvious reasons, to take that course. We might just as well assume that all of the earnings in excess of a fair return on the tangibles were attributable directly to patents. The *824 Humphrey Co. was a manufacturing organization, and patents were specifically included in the transfer of assets to the petitioner. The evidence does not justify one of these assumptions in preference to the other. Nothing has been given to us in the way of evidence as to the background of the successes and reverses of the Humphrey Co. We know nothing whatever as to its business policies, particularly as they affected the company’s relations with its customers, as to the steps taken toward the development of markets for its products, and as to the reputation of its products as to grade, quality, and serviceability. Without this background, any conclusion that we might draw from the mere application of a formula to earnings would be entirely a matter of conjecture. Joseph Z. Muir, et al., 4 B. T. A. 893; Landesman-Hirschheimer Co., 15 B. T. A. 64.
While the case was tried on the theory that there was issued to the Humphrey Co. capital stock of the par value of $405,900, divided into $316,000 of preferred and $89,900 of common, we are not unmindful of the fact that the agreement of March 24, 1913, between the Humphrey and Ruud Companies provided for the sale of all of the former’s assets to the latter for 290 shares of the latter’s common stock and the issuance thereafter of preferred stock of the Ruud Co. in an amount equal to the appraised value of the Humphrey Co.’s assets, specifically excluding therefrom the good will and patents. The issuance of preferred stock to the Humphrey Co. or its nominees in. the par amount of $316,000 was pursuant to this agreement. The additional common stock was issued to the former stockholders of the Humphrey Co. as a stock dividend, pursuant to a stockholder’s resolution adopted on July 14, 1913, and not under any provision of the agreement of sale.
The allegation of error respecting depreciation was abandoned at the hearing with the exception of exhaustion on manufacturing equipment, which the parties stipulated has a value for depreciation purposes of $125,582.39 and $153,590.13 for the respective taxable years. The petitioner is asking us to allow depreciation at the rate of 10 per cent claimed by it in its returns, instead of 1 per cent, the figure allowed by the respondent.
The uncontradicted testimony of the two qualified witnesses presented by the petitioner is that the manufacturing equipment has a useful life of 10 years. Their opinions are amply supported by their testimony as to life of the various classes of equipment comprising the whole, and we are of opinion that 10 per cent is a fair rate and should be used in computing the reasonable allowance provided by the statute.
The contention of the petitioner respecting the remaining issue is, in substance, that the term “ paid ” as used in the taxing acts in con *825 nection with credits allowed for taxes levied by foreign countries, means no more than “ paid or payable,” and inasmuch as the amount of taxes which it paid the Dominion of Canada for the years 1918 and 1919 was not known or payable until after the receipt in July, 1921, of notices of assessment, the taxes are a proper credit for the year 1921, the year in which they were paid, even though it kept its books on the accrual basis.
In support of its position, the petitioner has introduced into the record the Income War Tax Act, 1917, enacted by the Parliament of Canada, September 20,1917, together with amendments thereto dated May 24, 1918, and July 7, 1919. The notices of assessment clearly show that the taxes paid were assessed under the provisions of the Business Profits War Tax Act, 1916, which act has not been proved, and is not therefore before us as a fact for a consideration of its terms. See W. J. Burns, 12 B. T. A. 1209. Without proof of the foreign law under the terms of which the taxes were levied and paid, we are unable to say whether they come within the class of income, war-profits and excess-profits taxes allowed as a credit by section 238 of the Revenue Acts of 1918 and 1921, and if we were to indulge in the presumption that the taxes are within that limited classification, we would still be unable to ascertain that they did not accrue or become payable prior to 1921, as determined by the respondent.
The petitioner also contends that as the amount of taxes paid to foreign countries is allowed as a credit against domestic income, war-profits and excess-profits taxes, as distinguished from a deduction from gross income, income would not be distorted in any way by taking the credit in the year in which the taxes are paid, even though that be after the 'taxes actually accrued. The word “ paid ” as defined by Congress in section 200 of the Revenue Acts of 1918 and 1921 applies to deductions and credits with equal force. That Congress intended taxpayers on an accrual basis of accounting to take the credit when the taxes accrue, rather than when paid, is further evidenced by the terms of section 238 of the taxing acts, which provides for a refund or a credit or further payment of taxes in the event the accrued taxes when paid differ from the amounts claimed as credits.
In Henry Reubel, 1 B. T. A. 676, we held that in general the phrase “ paid or accrued ” as used in the statute, is to be construed in the alternative and forbids the use of both bases in one income-tax return. See also Atlantic Coast Line R. R. Co., 2 B. T. A. 892.

Judgment will be entered wider Rule 50.